

**U.S. Department of Justice**

*United States Attorney
Eastern District of New York*

DMJ:LMN
F. #2009R0865

*610 Federal Plaza
Central Islip, New York 11722*

June 6, 2013

**By Hand Delivery and ECF**

The Honorable Sandra J. Feuerstein
United States District Court
Eastern District of New York
1014 Federal Plaza
Central Islip, New York 11722

   Re: United States v. Jason Villaman
     Criminal Docket No. 09-619 (S-1)(SJF)

Dear Judge Feuerstein:

  The government respectfully submits this letter in connection with the sentencing of defendant Jason Villaman scheduled for Thursday, June 12, 2013 at 11:15 a.m. The defendant filed a sentencing letter that contains various objections to the Presentence Investigation Report ("PSR") and sets forth arguments pursuant to 18 U.S.C. § 3553(a) in support of a below-Guidelines sentence. For the following reasons, the defendant's arguments are without merit and this Court should sentence the defendant to a sentence within the Guidelines range listed in the PSR.

The Relevant Facts

  On October 5, 2010, a grand jury in this district returned a 39-count superseding indictment that charged the defendant Jason Villaman, Antonio Rivera and John Whaley with conspiracy to commit sex trafficking, forced labor and alien transportation and harboring as well as several substantive offenses (the "Superseding Indictment"). The Superseding Indictment also added new counts that reflected Amendments that the United States Congress made in December 2008 to the substantive forced labor and sex trafficking statutes. The charges in the Superseding Indictment were based on conduct that the defendants engaged in between approximately September 2005 and August 2009 at two Long Island bars known as Sonidos de la Frontera ("Sonidos") and La Hija del Mariachi ("Mariachi"). Villaman was employed as a driver and security guard at Sonidos from approximately September 2005 until sometime in 2007 and never worked at Mariachi.

  On April, 26, 2011, prior to the commencement of trial, the government moved to dismiss counts 17, 21 and 24 of the Superseding Indictment. A redacted superseding indictment was prepared that named Villaman in sixteen counts (the "Redacted Superseding Indictment"). On May 26, 2011, after a month-long trial, the jury returned a verdict convicting the defendant

on fifteen of the sixteen counts of the Redacted Superseding Indictment that charged him with crimes.

## The Presentence Investigation Report

The Probation Department prepared a PSR dated May 22, 2012 that set forth offense conduct, relevant conduct, personal and criminal history of the defendant and the applicable statutory provisions and Sentencing Guidelines calculations.

## The Defendant's Objections to the PSR Have No Merit

I. The Two Level Enhancement for Serious
Bodily Injury Under § 2A3.1(b)(4)(B) Is Appropriate

Defendant Villaman argues that the two-point enhancement under § 2A3.1(b)(4)(B) of the Guidelines in the PSR for serious bodily injury is inappropriate.[1] The defendant is wrong.

Section 2G1.1 of the Guidelines – the starting point for the calculation of the base offense level for the offense of sex trafficking conspiracy – provides for a cross-reference to U.S.S.G.§ 2A3.1 where "the offense involved conduct described in . . . 18 U.S.C. § 2242 [criminal sexual abuse or attempt thereto]". See § 2G1.1(c). Section 2242, in turn, describes the following conduct: knowingly (1)"caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear;" or (2) "engag[ing] in a sexual act with another person if that other person is – (A) incapable of appraising the nature of the conduct; or (b) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." 18 U.S.C. § 2242. An attempt to commit all of the foregoing acts is also criminalized in the same manner under the statute. 18 U.S.C. § 2242. Thus, where, as here, the facts of a defendant's conduct meet the elements of 18 U.S.C. § 2242, the appropriate guideline to use in calculating the base offense level is § 2A3.1. See § 2A3.1.

Section 2A3.1 further provides for specific offense characteristics. One of the specific offense characteristics is a two-point enhancement where the victim sustained "serious bodily injury". See § 2A3.1(b)(4)(B). "Serious bodily injury" is defined in the application notes as having the meaning given to that term in Application Note 1 of the Commentary to Section 1B1.1. Application note 1 of Section 1B1.1, in turn, defines "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization or physical rehabilitation." Section 1B1.1, app note 1(L). Moreover, conduct involving criminal sexual abuse is specifically excluded from the definition of "serious bodily injury" because it "already is taken into account in the base offense level under [§ 2A3.1(a)]." § 2A3.1, app note 1.

Villaman argues that the two-point enhancement does not apply because the victims did not sustain "serious" bodily injury. This argument is belied by the evidence at trial.

---

[1] Villaman does not appear to argue that § 2A3.1 is not the appropriate Guideline. Rather, he only addresses the specific offense characteristics of that Guideline in his sentencing submission.

2

Rivera punched Jane Doe #1 in the face with a closed fist. PSR ¶ 25. Then, Villaman dragged her outside to a vacant residence, covering her mouth and preventing her from screaming. PSR ¶ 25. Rivera again hit Jane Doe #1, knocking her unconscious. Jane Doe #1 woke up on a friend's sidewalk after she was dumped there by Rivera and Villaman. PSR ¶ 25. As to Jane Doe #2, Rivera grabbed her and shoved her into Villaman, who then in turn threw her out the front door onto the asphalt. PSR ¶ 27. With respect to Jane Doe #7, Villaman threw her to the floor in the kitchen of one of the bars, leaving her bruised and crying. PSR ¶ 48.

It is clear that "serious bodily injury" resulted from the defendants' treatment of the victims in this case, including Jane Doe #1 who was rendered unconscious and left on a sidewalk and testified that she sought treatment at a hospital but left before seeing a doctor. Villaman was found guilty of conspiracy to commit sex trafficking, conspiracy to commit forced labor and alien harboring conspiracy. Thus, he is responsible for the actions of the other co-conspirators made in furtherance of the unlawful agreement and should be held accountable for the "serious bodily injury" caused to Jane Does #1, #2 and #7.

Moreover, it is of no moment that the jury did not find beyond a reasonable doubt that there was "serious bodily injury" with respect to any victim other than Jane Doe #4.[2] In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court found that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") . Id. at 490. However, Apprendi does not apply to a sentencing enhancement that may increase a defendant's Guidelines range, but nevertheless does not increase the prescribed statutory maximum. See United States v. Garcia, 240 F.3d 180, 183-84 (2d Cir. 2001) ("We therefore join the other nine circuits that have ruled on direct review that a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not be submitted to a jury."); United States v. Feola, 275 F.3d 216, 219 (2d Cir. 2001) ("[Apprendi] does not apply to a fact that determines a Guideline range within a statutory maximum sentence".) Consequently, the government need only prove the "serious bodily injury" enhancement by a preponderance of the evidence. See United States v. Ashley, 141 F.3d 63, 69 (2d Cir. 1998) ("Disputed facts with regard to sentencing need only be proven by a preponderance of the evidence[.]"); see U. S. v. Washington, 73 F. 3d. Appx. 501, 503 (2d Cir. 2003).

Here, the serious bodily injury enhancement is not used to increase Villaman's maximum (or minimum) statutory sentence, but as a sentencing enhancement that will increase his Guidelines range. Thus, the standard that this Court will use in evaluating this enhancement is preponderance of the evidence. Certainly under that standard, the evidence at trial proved that in addition to Jane Doe #4 – whom the jury already found suffered "serious bodily injury" – Jane Does #1, #2 and #7 also suffered "serious bodily injury."

---

[2] Rivera arranged to have a security guard brutally beat up Jane Doe #4, causing her to go to the hospital and leaving her with lacerations, bruises on her face, swelling and broken teeth. PSR ¶ 37. The jury found beyond a reasonable doubt on the verdict form that Rivera was responsible for this "serious bodily injury" to Jane Doe #4.

II. The Four Level Enhancement Under § 2A3.1(b)(1) For Use
Of Physical Force and Threats of Serious Bodily Injury Is Appropriate

  Defendant Villaman argues that the four-point enhancement in the PSR under § 2A3.1(b)(1) for use of Physical Force and Threats of Serious Bodily Injury is inappropriate. Villaman argues that the four-point enhancement is unwarranted because the victims were only threatened with deportation; and where a victim alleges she was sexually assaulted, he disputes the veracity of that claim. Further, Villaman claims that he never physically assaulted, raped, sexually assaulted, or prostituted any victims. Villaman is wrong.

  One of the specific offense characteristics under § 2A3.1 provides for a four-point enhancement "[i]f the offense involved conduct described in 18 USC 2241(a) or (b)". U.S.S.G. § 2A3.1(b)(1). Title 18, United States Code, Sections 2241(a) and (b) criminalizes, in relevant part:

> (a) By Force or Threat --- . . .
>
> > knowingly caus[ing] another person to engage in a sexual act—
> > (1) by using force against that other person; or
> > (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping;
>
> or attempt[ing] to do so. . . .
>
> (b) By Other Means.— . . .
>
> > knowingly—
> > (1) render[ing] another person unconscious and thereby engages in a sexual act with that other person; or
>
> > (2) administer[ing] to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby—
>
> > > (A) substantially impair[ing] the ability of that other person to appraise or control conduct; and
>
> > > (B) engag[ing] in a sexual act with that other person;
>
> or attempt[ing] to do so. . . .

18 U.S.C. § 2241(a) and (b).

  Here, Jane Doe #1 was raped by a customer with the assistance of Rivera and Villaman, when Villaman held her arms and restrained her, Rivera pushed her legs apart and the two allowed a customer to vaginally penetrate her with his fingers. PSR ¶ 24. Jane Doe #2 was sexually assaulted by Villaman when he lured her to his house after a night of drinking at the bar,

4

where he gave her more alcohol, and then had sex with her while she was not in a condition to consent. Villaman also prostituted Jane Doe #2 to his friends out of his house. PSR ¶ 28. With respect to Jane Doe #5, Villaman arranged for a customer to rape her in a Sheraton Hotel in Smithtown after she passed out from alcohol intoxication in Villaman's car. Villaman sexually assaulted Jane Doe #7 by forcing her into a van, pulling down her underwear and penetrating her against her will. PSR ¶ 48.

Based on the foregoing facts, it is clear that a four-point enhancement for criminal sexual abuse is appropriate. First, as discussed earlier, the defendant was convicted, among other things, of conspiracy charges and thus is responsible for the acts of his co-defendants, including rapes, made during the course and in furtherance of the conspiracy. Moreover, it is clear that the rapes of Jane Does #1 and #7 fall within Section 2241(a) as "force or threat[s]" were used; the defendant in question certainly "knowingly" caused the rape; and the defendant in question used "force" against the victim, or "threaten[ed] or plac[ed]" the victim in fear that she would be subjected to, in the least, serious bodily injury. 18 U.S.C. § 2241(a). The remaining rapes are covered by Section 2241(b) as the defendant "render[ed]" the victim "unconscious and thereby engaged in a sexual act with" the victim; or the defendant "administer[ed] to[the victim]" without the victim's consent "a[n] intoxicant" and consequently "substantially impair[ed] the ability of" the victim "to appraise or control [her] conduct"; and then the defendant "engage[ed] in a sexual act" with the victim. 18 U.S.C. § 2241(b). Lastly, any attempt at such criminal sexual abuse also qualifies the defendant for the four-point enhancement. 18 U.S.C. § 2241(a) and (b). There can be no question that these rapes fall within the four-point enhancement for conduct constituting criminal sexual abuse under § 2A3.1(b)(1).

Lastly, to the extent that Villaman seeks a Fatico hearing on any factual issue he has raised in his sentencing memorandum, that request should be denied. This case was tried before a jury wherein the jury heard four weeks of testimony from twenty-eight witnesses, including 12 victims who worked in the bars. Testimony was long and detailed for many of these witnesses. Villaman had a full and fair opportunity -- and availed himself of that opportunity -- to cross-examine all of the witnesses, including the victims, and including those that specifically testified that he participated in a sexual assault against them. Moreover, Villaman put on a case at trial – calling his mother and his girlfriend as witnesses on his behalf. Villaman is not entitled to a Fatico hearing because he had a full and fair opportunity to litigate both the facts and the sentencing issues during the trial, and has been put on notice through the PSR of any sentencing enhancements. See United States v. Phillips, 431 F.3d 86, 93 (2d Cir. 2005) ("The district court is not required, by either the Due Process Clause or the federal Sentencing Guidelines, to hold a full-blown evidentiary hearing in resolving sentencing disputes. All that is required is that the court afford the defendant some opportunity to rebut the Government's allegations.") (quoting United States v. Slevin, 106 F.3d 1086, 1091 (2d Cir.1996)).

### The 3553(a) Factors Do Not Warrant A Below Guidelines Sentence

Section 3553(a)(1) requires that the Court consider the nature and circumstances of the offense before imposing sentence. In this case, the nature and circumstances of the offense weigh heavily in favor of a Guidelines sentence. Section 3553(a)(2) additionally

requires that the Court also consider the need for the sentence imposed to accomplish certain goals including, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.

It is well settled that the Court must impose a sentence that is sufficient, but not greater than necessary, to comply with the above-referenced needs. In this case, in light of the defendant's prior criminal history, personal background, the nature, seriousness and magnitude of the offense and the harm caused to the victims, it is clear that a guidelines sentence would accomplish those goals.

A guidelines sentence would reflect the seriousness of the offense, which as discussed above and in the PSR was extensive in both scope and harm to the victims. Second, a guidelines sentence would ensure public safety in that the defendant, a repeat sexual offender, would not be free to commit additional crimes. Given the fact that the defendant has not been able to refrain from engaging in illegal conduct that physically, emotionally and economically harms others, despite his prior incarceration, a lengthy term of imprisonment is warranted. Clearly, the defendant's prior brief terms of incarceration did nothing to prevent the instant offense.

In addition, a guidelines sentence would provide both general and specific deterrence. Such a sentence would send a strong message to others who might contemplate engaging in similar criminal conduct that the potential consequences of such criminal acts could be severe. Such a sentence would also aid in maintaining the public's confidence in our criminal justice system.

Finally, a guidelines sentence would ensure that the defendant would have very limited opportunities to harm others in the future.

## Conclusion

Based on the above, we respectfully request that the Court impose a Guidelines sentence consistent with the calculation contained in the PSR.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: *[signature]*
Demetri M. Jones
Licha M. Nyiendo
Assistant U.S. Attorneys
(631) 715-7840/7825

John Cotton Richmond
Special Litigation Counsel
U.S. Department of Justice

cc: Edward P. Jenks, Esq. (via email)
Counsel for Jason Villaman

Mary Ann Betts, P.O.
U.S. Probation Department
Brooklyn, New York

United States v. Jason Villaman
Cr. No. 09 CR 619(S-1)(SJF)

### COUNTS OF CONVICTION

| COUNT | OFFENSE DESCRIPTION | STATUTORY SECTION | STATUTORY PENALTY |
|---|---|---|---|
| 1 | Sex Trafficking Conspiracy 2005-08 | 18 USC 371 and 1591(b)(1) | 15 years to life |
| 2 | Sex Trafficking 2005-08 as to Jane Doe 1 | 18 USC 1591(a) and 1591(b)(1) | 15 years to life |
| 3 | Sex Trafficking 2005-08 as to Jane Doe 2 | 18 USC 1591(a) and 1591(b)(1) | 15 years to life |
| 4 | NOT CHARGED | | N/A |
| 5 | NOT CHARGED | | N/A |
| 6 | Forced Labor Conspiracy 2005-08 | 1589 | 0 to 20 years |
| 7 | Forced Labor 2005-08 as to Jane Doe 1 | 1589 | 0 to 20 years |
| 8 | Forced Labor 2005-08 as to Jane Doe 2 | 1589 | 0 to 20 years |
| 9 | NOT CHARGED | | N/A |
| 10 | NOT CHARGED | | N/A |
| 11 | NOT CHARGED | | N/A |
| 12 | NOT CHARGED | | N/A |
| 13 | NOT CHARGED | | N/A |
| 14 | NOT CHARGED | | N/A |
| 15 | NOT CHARGED | | N/A |
| 16 | NOT CHARGED | | N/A |
| 17 | NOT CHARGED | | N/A |
| 18 | NOT CHARGED | | N/A |
| 19 | NOT CHARGED | | N/A |
| 20 | NOT CHARGED | | N/A |
| 21 | NOT CHARGED | | N/A |
| 22 | Alien Transportation/ Harboring Conspiracy | 8 USC 324(a)(1)(A)(v)((I); 1324(a)(1)(B)(i); and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 23 | Alien Transportation as to Jane Doe 1 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 24 | Alien Transportation as to Jane Doe 2 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 25 | NOT CHARGED | | N/A |
| 26 | NOT CHARGED | | N/A |

| COUNT | OFFENSE DESCRIPTION | STATUTORY SECTION | STATUTORY PENALTY |
|---|---|---|---|
| 27 | Alien Transportation as to Jane Doe 5 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 28 | **ACQUITTED** | | **N/A** |
| 29 | Alien Transportation as to Jane Doe 7 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 30 | Alien Harboring as to Jane Doe 1 | 8 USC 1324(a)(1)(iii), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 31 | Alien Harboring as to Jane Doe 2 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 32 | **NOT CHARGED** | | **N/A** |
| 33 | **NOT CHARGED** | | **N/A** |
| 34 | Alien Harboring as to Jane Doe 5 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 35 | Alien Harboring as to Jane Doe 6 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |
| 36 | Alien Harboring as to Jane Doe 7 | 8 USC 1324(a), 1324(a)(1)(B)(i) and 1324(a)(1)(B)(ii) | 0 to 10 years |