**EDWARD P. JENKS**
Attorney at Law
332 Willis Avenue
Mineola, NY 11501
Tel: (516) 741-2920
Fax: (516) 747-3136
Email: jenksesq@aol.com
_____

June 10, 2013

**VIA ELECTRONIC CASE FILING**
Hon. Sandra J. Feuerstein, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza, Room 810
Central Islip, NY 11722

<u>Re: United States v. Jason Villaman, Docket No. 09-CR-619 (SJF)</u>

Your Honor:

I respectfully write, on behalf of defendant Jason Villaman, in response to the Government's sentencing memorandum dated June 6, 2013 ("Gov't Mem.") and the Addendum to the Presentence Report released on the same date ("Addendum").

*The Government and Probation Department Concede that Not
All the Victims Suffered Serious Bodily Injury, Physical Force
and/or Threats of Serious Injury*

The first notable thing about the Government's sentencing memorandum is that it does not attempt to defend the two-level "serious bodily injury" enhancement (U.S.S.G. § 2A3.1(b)(4)(B)[1]) as to any victim other than Jane Doe Nos. 1, 2 and 7. <u>See</u> Gov't Mem. at 2-3. Moreover, with respect to the four-level enhancement for use of force and/or threat of serious bodily injury (U.S.S.G. § 2A3.1(b)(1)), the Government only makes arguments as to Jane Doe Nos. 1, 2, 5 and 7. <u>See</u> Gov't Mem. at 4-5. Similarly, the PSR Addendum only attempts to defend the "serious bodily injury" enhancement as to Jane Doe No. 1, and does not add any further discussion regarding the "force or threats" enhancement. <u>See</u> Addendum at 1-2.

---

[1] Defendant does not dispute that U.S.S.G. § 2A3.1 is applicable to this case via a cross-reference. Therefore, the Government's argument as to the applicability of that guideline, <u>see</u> Gov't Mem. at 2, while correct, is unnecessary.

1

Thus, both the Government and the Probation Department *have effectively conceded* that neither the "serious bodily injury" nor the "force or threats" enhancement applies to Jane Doe Nos. 6 or 8, and that at least the "serious bodily injury" enhancement does not apply to Jane Doe No. 5. And since, as defendant does not contest, the grouping rules require his conduct toward each victim to be treated separately as if charged in a separate count, see U.S.S.G. § 1B1.2(d), this means that the defendant's actions toward Jane Doe Nos. 6 and 8, which are treated as distinct counts for Guideline purposes, should not reflect either enhancement.

In sum, *even if this Court were to accept all the Government's and the Probation Department's arguments as correct*, the applicable Guideline levels would be as follows:

| | |
|---|---|
| Jane Doe No. 1 (Counts 1(A), 2, 6(A) and 7): | 38 |
| Jane Doe No. 2 (Counts 1(B), 3, 6(B) and 8): | 38 |
| Jane Doe No. 5 (Count 1(E)): | 36 |
| Jane Doe No. 6 (Count 1(F)): | 32 |
| Jane Doe No. 7 (Count 1(G)): | 38 |
| Jane Doe No. 8 (Count 1(H)): | 32 |
| Harboring Counts (22-24, 27, 29-31, 34-36) | 18 |

Under the grouping rules, the counts regarding Jane Doe Nos. 1, 2, 5 and 7 would thus be treated as full Units, those regarding Jane Doe Nos. 6 and 8 would be treated as half-Units, and the harboring counts would be disregarded. See U.S.S.G. § 3D1.4. This results in a total of five Units, meaning that four levels are added to the offense level for the highest Unit. See id. As such – and again, *even if this Court were to accept each and every one of the arguments in the Government's submission* – the defendant's total offense level would be 42 rather than 43 as specified in the PSR, yielding an advisory Guideline range of 360 months to life.

### *The Serious Bodily Injury Enhancement is Inapplicable as to Any of the Conduct Attributed to the Defendant*

In any event, the Government's arguments as to the "serious bodily injury" enhancement *are not* correct, because the Government has lost sight of the distinction between "bodily injury" and "*serious* bodily injury" under the Guidelines. Pursuant to U.S.S.G. § 1B1.1, Application Note 1(B), "bodily injury" means "any significant injury; e.g., *an injury that is painful and obvious*, or is of a type for which medical attention ordinarily would be sought" (emphasis added). *Serious* bodily injury, on the other hand, "means injury involving *extreme* physical pain or the *protracted* impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention *such as surgery, hospitalization, or physical rehabilitation*" (emphasis added). See U.S.S.G. § 1B1.1, Application Note 1(L).[2]

---

[2] Application Note 1(L) also classifies criminal sexual abuse as "serious bodily injury;" however, as the Government agrees (see Gov't Mem. at 2), "conduct involving criminal sexual abuse is specifically excluded from the definition of 'serious bodily injury' [for the offenses at bar in this case] because it already is taken into account in the base offense level." See U.S.S.G. § 2A1.3, Application Note 1. Thus, if the enhancement is to be applied in this case, it must be based on the victims' alleged physical injuries, *not* on any act of sexual abuse.

Thus, the fact that an injury is painful, or even that it requires some level of medical intervention, does not mean that it rises to the level of serious bodily injury. Instead, it must be *extremely* painful – i.e., equivalent to torture – or it must cause extended impairment and/or a need for surgery or hospitalization. And as the Government does not dispute, only serious bodily injury – not bodily injury – qualifies for the U.S.S.G. § 2A1.3(b)(4)(B) enhancement.

The Government's contentions as to Jane Doe Nos. 2 and 7 are thus easily refuted. As the Government concedes, the conduct suffered by Jane Doe No. 2 consisted of Antonio Rivera grabbing her and shoving her into defendant Villaman, who "in turn threw her out the front door onto the asphalt." See Gov't Mem. at 3. Her injury from this incident amounted to a scraped knee. See PSR, ¶ 27. As to Jane Doe No. 7, the Government contends only that Villaman threw her to the floor on one occasion, "leaving her bruised and crying." See Gov't Mem. at 3, citing PSR, ¶ 48. While these incidents, assuming that they happened as alleged, were no doubt unpleasant and humiliating, there is no indication that they involved "extreme" pain, protracted impairment of a bodily function or organ, and/or a need for surgery or hospitalization. Skinned knees and bruising, while arguably "bodily injury," simply do not rise to the level of *serious* bodily injury, and thus do not support the enhancement.

The injuries allegedly suffered by Jane Doe No. 1 present a closer question, but they too do not add up to "serious bodily injury" under the Guidelines. As detailed in the Government's memorandum, the allegations regarding this victim are that Rivera punched her once in the face, Villaman covered her mouth and dragged her to a vacant residence, and Rivera hit her again knocking her unconscious. See Gov't Mem. at 3, citing PSR, ¶ 25.[3] She woke up on the sidewalk a short time later. See id. Notably, there are no allegations that she suffered a *protracted* loss of consciousness.

In United States v. Egbert, 562 F.3d 1092 (10th Cir. 2009), the Tenth Circuit found that two beatings, one of which resulted in temporary unconsciousness, *did not* rise to the level of serious bodily injury. In Egbert, a Mexican bartender, Jimmy Ballesteros, asked a group of unruly patrons to leave his bar. One of the patrons punched Ballesteros and pulled him out the door into the vestibule, where several others, including Egbert, punched and kicked him and used racial slurs against him. See id. at 1095. Ballesteros "was bruised and had a bloody nose, but did not seek medical attention." Id.

Some two and a half months later, the same group of people assaulted a Native American man outside a bar, "beating him until he stopped moving." Id. The beating lasted a couple of minutes, and at least three witnesses described him as being unconscious and bleeding from the head when the attack ended. See id. at 1101.

The Tenth Circuit found that, on these facts, serious bodily injury was not proven, because "[c]ases from this and other circuits upholding serious bodily injury enhancements involve substantially more evidence of serious injury requiring medical treatment than the

---

[3] According to the PSR Addendum, Rivera's second punch was delivered several hours after the first, at the end of the working day. See Addendum at 1.

3

evidence presented here." Id. at 1101-02 (collecting cases). As to the issue of unconsciousness, the Egbert court stated:

> The government contends that the evidence supports a finding that the victim lost consciousness, which, according to the government, constitutes a protracted impairment of a mental faculty. Even if the witnesses were correct in their belief that the victim lost consciousness, we do not know whether the injury was "protracted," and the cases cited by the government do not support the contention that a brief loss of consciousness without more satisfies the definition of serious bodily injury.

Id. at 1102. In further support of this holding, the court cited United States v. Johnson, 637 F.2d 1224, 1246 (9th Cir. 1980), abrogated on other grounds, Schmuck v. United States, 489 U.S. 705 (1989), which noted that unconsciousness by itself was not enough to constitute serious bodily injury for statutory purposes.

If anything, the beating in Egbert, which involved a gang assault with many punches and kicks, was *more* severe than the conduct toward Jane Doe No. 1 in the instant case, which allegedly involved two closed-fist punches separated by several hours, the latter of which resulted in brief unconsciousness. Thus, if the beating in Egbert did not rise to the level of serious bodily injury, the alleged beating of Jane Doe No. 1 certainly did not.[4] This Court should accordingly find that the "serious physical injury" enhancement does not apply as to any of the Jane Doe victims.[5]

### *The "Force or Threats" Enhancement Likewise Does Not Apply In This Case*

The Government's arguments concerning the "force or threats" enhancement are likewise flawed. As to Jane Doe Nos. 2 and 5, the Government does not allege either that defendant actually rendered these victims unconscious or that he administered alcohol or drugs to them "by

---

[4] The PSR Addendum's allegation that "Antonio Rivera later promised Jane Doe #1 $10,000 if she did not speak with police about this incident" and that "Jane Doe #1 had to change residences on three occasions to avoid being contacted by Antonio Rivera and the defendant," see Addendum at 1, are immaterial to whether her physical injuries were "serious" under the Guidelines. "It is the actual nature of the *injury* sustained and not generalized statements concerning the nature of the conduct that must be the focus of the district court's determination." Egbert, 562 F.3d at 1102 (emphasis in original), quoting United States v. Perkins, 132 F.3d 1324, 1326 (10th Cir. 1997).

[5] Again, defendant points out that neither the Government nor the Probation Department seeks to impute any responsibility to this defendant concerning Jane Doe No. 4, which is entirely appropriate given that (a) he was not convicted of any count relating to Jane Doe No. 4, and (b) the injury to Jane Doe No. 4 was inflicted by Antonio Rivera for personal reasons, outside defendant Villaman's presence, and Villaman had no advance knowledge of it.

4

force or threat of force," see 18 U.S.C. § 2241(b)(1)-(2), meaning that the enhancement cannot apply with respect to them even if he prostituted and/or had sexual relations with them while they were passed out.

As to Jane Doe Nos. 1 and 7, defendant acknowledges that the allegations in the PSR, if proven by a preponderance of the evidence, would support the enhancement. However, as set forth in his original sentencing memorandum, defendant denies that he committed any of these acts and requests a Fatico hearing as to whether a sentencing enhancement may properly be based on these allegations. Defendant further notes (a) that he was not convicted of any substantive count with respect to Jane Doe No. 7, meaning that the jury cannot be presumed to have accepted her testimony, and (b) even the fact that he was convicted of a substantive count with respect to Jane Doe No. 1 does not mean that the jury accepted her testimony *in every detail*. Given the discrepancies, irregularities and inconsistencies pointed out in defendant's Rule 29 motion, which is incorporated by reference herein, the jury could well have concluded that defendant committed sex trafficking and/or forced labor offenses but that the complainants' testimony was nevertheless exaggerated in order to gain maximum sympathy and to obtain favorable consideration for an immigrant visa. This Court should thus find that the victims' trial testimony was not sufficient in itself to prove facts supporting the U.S.S.G. § 2A1.3(b) enhancement by a preponderance of the evidence, and should either decline to apply that enhancement or else hold a Fatico hearing to determine whether it should apply.

*Final Guideline Calculation*

In sum, this Court should find that neither the U.S.S.G. § 2A1.3(b)(1) enhancement nor the U.S.S.G. § 2A1.3(b)(4)(B) enhancement applies as to any of the Jane Does, and that the Guideline offense level as to each one is 32, yielding a total offense level after grouping of 37 and an advisory sentencing range of 235 to 293 months.

Alternatively, if this Court finds that the U.S.S.G. § 2A1.3(b)(1) enhancement applies as to Jane Doe Nos. 1 and 7, the offense level is 36 as to those two Jane Does and 32 as to the others, yielding a total offense level of 40 after grouping and an advisory sentencing range of 324 to 405 months.

*This Court Should Impose a Below-Guideline Sentence*

Finally, defendant contends that the 18 U.S.C. § 3553(a) factors militate in favor of a sentence substantially below the advisory Guideline range. In this regard, defendant notes that the Government does not dispute any of the mitigating factors discussed in his original sentencing memorandum, including his learning disability and the many testimonials to his character that have been submitted by people who knew him. Instead, the Government makes a highly generic argument to the effect that "a lengthy term of imprisonment" would reflect the seriousness of the offense and provide for deterrence. See Gov't Mem. at 5-6. Defendant submits that the Government's argument is contrary to the *individualized* sentencing regime that now prevails in Federal courts, in which the proper sentence must be based upon the defendant's individual history and characteristics rather than merely generic factors.

5

In any event, defendant submits that a below-Guideline sentence would be (in the Government's words) "lengthy" enough to provide just punishment and general and specific deterrence. The statutory minimum sentence that defendant faces in this case is 180 months. That is a long time. 180 months after entering kindergarten, a student will be a college senior. 180 months after graduating West Point, a newly-minted lieutenant will most likely be a lieutenant colonel. Defendant respectfully submits that this Court should consider all it has done in the past 180 months, and then consider how long that period of time would be if it had been spent in prison instead. Or if 180 months is not long enough, then this Court might want to consider how long 240 months is – more than a quarter of an American male's life expectancy, and enough time to turn a newborn into an adult.

Surely, the possibility of losing 180 or 240 months of one's life would be a powerful deterrent to this defendant or any similarly situated person committing such crimes in the future, and such an extended deprivation of liberty would be more than sufficient to provide just punishment and reflect the seriousness of the offense, especially given the undisputed mitigating factors that exist here. Nobody is suggesting that defendant Villaman get off with a slap on the wrist; instead, defendant acknowledges that he has been convicted of serious offenses which require substantial punishment. But that punishment cannot be greater than necessary to satisfy the purposes of Section 3553(a), and the Government's generic argument does not support a finding that a Guideline sentence is required to accomplish these goals. This Court should accordingly impose a sentence considerably below the advisory Guideline range.

### *Conclusion*

In light of the foregoing, this Court should find that the applicable Sentencing Guideline offense level is 37 rather than 43, and that, given defendant's criminal history category of II, the advisory sentencing range is 235 to 293 months. Moreover, in light of the compelling Section 3553(a) factors cited above, this Court should impose a punishment which, while substantial, is considerably below the advisory range.

The Court's consideration in this matter is appreciated.

Respectfully submitted,

/s/

Edward P. Jenks, Esq.

*Of Counsel*: Jonathan I. Edelstein

cc:   AUSA Demetri Jones (Via ECF)
      USPO Mary Ann Betts (Via ECF)